CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
March 31, 2025
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ALUCIOUS WILLIAMS, JR.,  )  | |
| Plaintiff,  ) | Civil Action No. 7:24-cv-00127 |
| )| |
| v.  )| |
| )| By: Elizabeth K. Dillon |
| SGT. ALLEN, *et al.*,  )| Chief United States District Judge |
| Defendants.  )| |

**MEMORANDUM OPINION**

Plaintiff Alucious Williams, Jr., a prisoner acting *pro se*, brought a lawsuit alleging violations of his constitutional rights when he was housed at Red Onion State Prison. (Compl., Dkt. No. 1.) Before the court are motions to dismiss for failure to state a claim filed by defendants Nurse Fletcher, Nurse Craft[1] (Dkt. No. 23) and Nurse Practitioner J. Bledsoe (Dkt. No. 41).[2] Williams responded to Nurses Fletcher and Craft's motion to dismiss and later submitted affidavits. (Dkt. Nos. 75, 77.) He did not respond to Nurse Practitioner Beldsoe's motion. For the following reasons, the motions to dismiss will be granted.

I. BACKGROUND

In a verified complaint, Williams alleges that on February 12, 2022, he was pulled out of his cell by Sgt. Allen, Sgt. Grubbs, Sgt. Mayes, Officer Rose, and Lt. Barton[3] and placed in the shower so a trustee could clean feces that had been smeared on the window of the cell, the walls, and the floor. (Compl. 2–3.) While in the shower, an unnamed corrections officer and Sgt.

---

[1] The complaint identifies this defendant as Nurse Kraft, but the correct spelling is Craft, and the Clerk is directed to update the docket accordingly. (*See* Dkt. No. 17.)

[2] The remaining defendants—Sgt. Allen, Sgt. Grubbs, Sgt. Mayes, and Officer Rose—filed a motion for summary judgment, which will be addressed separately. (Dkt. No. 65.) This order also does not address plaintiff's motion for a preliminary injunction. (Dkt. No. 61.)

[3] Lt. Barton has been served but has not appeared in this action. (Dkt. Nos. 37, 38.)

Grubbs attempted to "bait" plaintiff into an argument. When Williams did not respond, Sgt. Allen left and returned 10–15 minutes later, and the officers huddled around as if they were "mafia figures." (*Id.* at 3.) The trustee, at the direction of Lt. Barton, began to throw away several items of legal mail and other documents that belonged to Williams.

When Williams was escorted back to his cell, he observed that the officers did not use any disinfectant to clean his cell, leaving behind fecal matter residue along with actual feces in the sink, toilet, and floor. Because of this, he refused to enter the cell. Sgt. Grubbs, Sgt. Allen, Sgt. Mayes, and Officer Rose pushed his face to the floor. Allen and Grubbs punched plaintiff in the forehead and left temple 7–8 times, and Allen slammed plaintiff's head against the floor three times, splitting his right eye and causing it to bleed. Sgt. Allen then rubbed his face in the toilet water containing feces. (*Id.* at 4.)

Then, Williams was taken to the C-4 pod sallyport and placed in four-point restraints. Here, he was assessed by Nurse Fletcher, and Williams told her that his right eye needed stitches and that his blood was on the wall of the sallyport. Also, his left temple, jaw, and lip were severely swollen, and the other defendants were trying to put a spit mask over his face to conceal his injuries. Fletcher told the officers to take Williams to medical. In addition to the swelling, he suffered a fractured left eye socket and cheekbone, and his eye required liquid stitches. (*Id.*)

Williams alleges further that Nurse Fletcher attempted to minimize the extent of his injuries and did not give him adequate medical treatment. After he was taken to medical, Nurse Fletcher cleaned his face with an alcohol pad and gauze, and they both were saturated in blood. (*Id.* at 5.) Fletcher gave Williams pain medication and stated she would prescribe an ice pack for the swelling. He was "forced to argue" about the state of his right eye and the fact that it was still bleeding. Fletcher then examined his right eye and applied a clear substance that smelled

like superglue. He asked and was told it was a "liquid stitch". (*Id.*) Despite his injuries, including severe swelling in his left temple, forehead, lip, and jaw, and having a fractured left eye socket and a split, bleeding right eye, Nurse Fletcher did not admit him to medical for observation, nor did she send him to an outside physician to receive stitches or to have an x-ray taken of his face. (*Id.* at 5–6.) He further complains that he was discharged from medical with a small ice pack and sent back to his cell that had blood, feces, and toilet water on the window and walls, exposing him to infectious diseases.

The next morning, at pill-pass, Nurse Craft denied him an ice pack. He told Craft that the wound along his right eye was still open and bleeding. At the afternoon pill-pass, Craft told him that "Nurse Fletcher said that I must be picking at the wound, because it was properly treated." (*Id.* at 6.)

On February 15, 2022, he showed his injuries and the state of his cell to Chaplain Theiben. He also told him about the assault and asked him to notify an outside source. The Chaplain said that he would file a complaint after finishing his rounds. Theiben later told Williams that he submitted the complaint. Williams notified the intel officer and asked that pictures be taken and the video evidence be saved. (*Id.* at 7.)

Later, on February 17, Williams had counselor Kegley fill out a request to medical for a sick call due to his injuries and a request to the intel department requesting that the video footage be saved and photos be taken of his injuries. Intel responded that the video had been saved. Medical responded by stating that he had "already been seen for this issue." (*Id.*)

He alleges that he was unable to acquire a pen to write a grievance until March 9, 2022. He filed informal complaints on the officers who committed the assault and the defendants for denying him adequate medical care. As a result, he was seen by a nurse on March 9, 2022. The

unnamed nurse examined his forehead and temple. The nurse said that there was not any structural damage and did not order an x-ray. (*Id.* at 7–8.) Williams complains that he has permanent injuries due to defendants' negligence. (*Id.* at 8.)

Williams requests a restraining order against the defendants who assaulted him, $15,000 in compensatory damages from each defendant, and $10,000 in punitive damages from each defendant.[4]

In response to the motion to dismiss, Williams has submitted further affidavits and exhibits pertaining to the above incidents. (*See* Dkt. Nos. 75-1, 75-2, 77-1, 77-2.)

## II. ANALYSIS

### A. Motion to Dismiss

When analyzing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the court must view all well-pleaded allegations in the light most favorable to the plaintiff. *Kashdan v. George Mason Univ.* 70 F.4th 694, 700 (4th Cir. 2023). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Even so, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. A plaintiff must "plausibly suggest an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]'

---

[4] Williams attached an affidavit to his complaint with substantively identical allegations as his verified complaint. (Dkt. No. 1-1.)

4

devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

In addition, *pro se* plaintiffs are held to a "less stringent standard" than lawyers, and courts construe their pleadings liberally, no matter how "inartfully pleaded." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, a *pro se* complaint must still meet the "minimum threshold of plausibility" under *Twombly* and *Iqbal*. *See Manigault v. Capital One, N.A.*, CIVIL NO. JKB-23-223, 2023 WL 3932319, at *2 (D. Md. June 8, 2023). While *pro se* complaints "represent the work of an untutored hand requiring special judicial solicitude," district courts are not required to "conjure up questions never squarely presented to them" or to "construct full blown claims from . . . fragments." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277–78 (4th Cir. 1985).

**B. Deliberate Indifference**

Claims under 42 U.S.C. § 1983 based on an alleged lack of or inappropriate medical treatment fall within the Eighth Amendment's prohibition against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To prevail on such a claim a plaintiff must demonstrate "deliberate indifference to serious medical needs" of the inmate. *Id.*

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Deliberate indifference requires a showing that the defendants actually knew of and disregarded an excessive risk to inmate health or safety. *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). An official acts with deliberate indifference if he had actual knowledge of the prisoner's serious medical needs and the related risks but nevertheless disregards them. *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018).

5

The prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Allegations that might be sufficient to support negligence and medical malpractice claims do not, without more, rise to the level of a cognizable § 1983 claim. *Estelle*, 429 U.S. at 106. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* Moreover, a prisoner "is not entitled to choose his course of treatment. Disagreements over forms of treatment concern medical judgment, not the Eighth Amendment, and mere negligence in diagnosis or treatment does not state a constitutional claim." *Reeves v. Davis*, NO. 5:21-CT-3256-M, 2024 WL 4349885, at *5 (E.D.N.C. Sept. 30, 2024) (citing *Estelle* and *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999)).

As an initial matter, Williams fails to plead any facts pertaining to Nurse Practitioner Bledsoe. In the absence of any substantive allegations of wrongdoing against Bledsoe, the court cannot construe a viable cause of action. *See Smith v. Fox*, C/A No. 6:09-3280-TLW-WMC, 2010 WL 1052484, at *2 (D.S.C. Jan. 8, 2010) (citing *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

Williams does reference treatment that he received from an unnamed nurse on March 9, 2022, who examined his forehead and temple and did not order an x-ray. To the extent that the court could construe this as a claim against Bledsoe, it is insufficient to state an Eighth Amendment claim because it represents plaintiff's disagreement with his course of treatment, not deliberate indifference.[5]

---

[5] In his response to the motion to dismiss, Williams appears to state that this unnamed nurse was someone named L. Jessee. (Dkt. No. 75 at 6.)

Similarly, Williams's complaints that Nurses Craft and Fletcher did not give him more extensive treatment or order diagnostic testing fall short of stating a claim for violation of the Eighth Amendment. Prisoners are not entitled to a particular course of treatment, and plaintiff's "self-diagnosis" of a more serious injury to his face requiring an x-ray does not establish the existence of a medical need that is so obvious that "even a lay person would easily recognize the necessity for a doctor's attention." *Scinto*, 841 F.3d at 225; *see also Riddick v. Collins*, Civil Action No. 7:20-cv-00742, 2023 WL 2707428, at *4 (W.D. Va. Mar. 30, 2023) ("To the extent Riddick also suggests that he may have experienced a concussion or muscle damage, his 'self diagnosis alone' [is] insufficient [to] satisfy the objective component . . ."). Regarding diagnostic testing in particular, the question of whether such tests are indicated "is a classic example of a matter for medical judgment. A medical decision not to order a CAT scan, or like measures, does not represent cruel and unusual punishment." *Harper v. Gore*, Civil Action No. 3:15CV303, 2016 WL 6662697, at *6 (E.D. Va. Nov. 10, 2016) (citing *Estelle*, 429 U.S. at 107).

Williams' allegations about the administration of stitches and an ice pack are also insufficient to state an Eighth Amendment claim. Williams was treated for his injuries, including his cuts that were bleeding. *Mullins v. S.W. Va. Reg'l Jail Auth.*, Civil Case No. 7:21-cv-00289, 2021 WL 2188242, at *2 (W.D. Va. May 28, 2021) (rejecting Eighth Amendment claim because plaintiff "does not allege that he received no treatment for the cut . . . . It appears that he simply did not receive the additional treatment he thought he should receive . . ."). Also, his cut is not a sufficiently serious medical condition to satisfy the objective prong of his Eighth Amendment claim. *See Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir. 1988) (affirming finding of "no serious medical needs" where plaintiff had cut over one eye, a quarter-inch piece of glass in palm, and required to wait fourteen hours for treatment); *Mullins*, 2021 WL 2188242, at *2 (finding it

7

"unlikely that a cut, even one that leaves a three-inch scar, is a sufficiently serious medical condition so as to satisfy the objective element of his claim").

Williams has argued that Nurse Fletcher showed deliberate indifference because he only received stitches after he complained about needing stitches. (*See* Dkt. No. 75 at 11.) Even assuming that he had presented with a serious medical need, he cannot argue that defendants disregarded his serious medical needs when they did administer the treatment that he requested. He complains that the stitch was "a liquid stitch that did not properly close the wound," (*id.*), but this again does not plausibly allege that Nurse Fletcher disregarded his need for medical attention. Williams also complains that he should have been placed in a convalescent unit in accordance with certain policies established by the Virginia Department of Corrections. (*Id.* at 12.) Violations of VDOC policy do not establish a viable Eighth Amendment claim or any type of constitutional claim. "VDOC's policies . . . do not, by themselves, give rise to constitutional claims for deliberate indifference to a serious medical need. It is the Eighth Amendment, not VDOC policies, that establish the rights Plaintiff purports to vindicate." *Person v. Whited*, Case No. 7:20-cv-00146, 2022 WL 885097, at *5 (W.D. Va. Mar. 25, 2022).

Finally, much of Williams' response expands upon and supplements the allegations in his complaint. (Dkt. Nos. 75, 75-1, 77-1, 77-2.) For example, he complains that a bone was "protruding out above my left eye." (Dkt. No. 75 at 6.) He also asserts that Nurse Craft did not let him have an ice pack and that she "allowed non-medical professionals to dictate the medical treatment that I received." (*Id.* at 13.) Williams cannot amend his complaint in his briefing in response to a motion to dismiss. *See Draper v. Ohai*, Civil Action No. 7:23-cv-00248, 2025 WL 270051, at *2 n.3 (W.D. Va. Jan. 22, 2025) (stating that "parties are not permitted to amend their complaints by adding allegations in an opposition brief"). Additionally, the exhibits he

8

submitted (Dkt. Nos. 75-2) are not relevant to the court's analysis of the sufficiency of the complaint. *See Zak v. Chelsea Therapeutics Intern., Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015).

For these reasons, the court will grant the motions to dismiss for failure to state a claim.

### III.  CONCLUSION

The court will grant the motions to dismiss in an appropriate order.

Entered: March 31, 2025.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
Chief United States District Judge