CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
September 02, 2025
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ALUCIOUS WILLIAMS, JR., ) | |
|    Plaintiff, ) | Civil Action No. 7:24-cv-00127 |
| ) | |
| v. ) | |
| ) | By: Elizabeth K. Dillon |
| SGT. ALLEN, *et al.*, ) | Chief United States District Judge |
|    Defendants. ) | |

**MEMORANDUM OPINION**

Plaintiff Alucious Williams, Jr., a prisoner acting *pro se*, brought a lawsuit alleging violations of his constitutional rights when he was housed at Red Onion State Prison. (Compl., Dkt. No. 1.) Before the court is a motion for summary judgment filed by defendants Sgt. Allen, Sgt. Grubbs, Sgt. Mayes, and Officer Rose. (Dkt. No. 65.) Defendants argue that Williams did not exhaust his administrative remedies. Williams has filed a response to this motion. (Dkt. No. 73.) In addition, Williams filed a motion to enter evidence, which was granted. The court's order explained that it would consider this evidence when addressing the pending motion for summary judgment. (Dkt. Nos. 77, 77-1, 77-2, 79.) Also before the court is a motion for default judgment by Williams against defendant Lt. Barton. (Dkt. No. 86.)

For the reasons stated below, defendants' motion for summary judgment will be denied and Williams' motion for default judgment will be denied. The court will refer this matter to a magistrate judge to conduct an evidentiary hearing on whether administrative remedies were available to Williams.

I. BACKGROUND

A. **Plaintiff's Complaint**

In a verified complaint, plaintiff alleges that on February 12, 2022, he was pulled out of his cell by Sgt. Allen, Sgt. Grubbs, Sgt. Mayes, Officer Rose, and Lt. Barton and placed in the shower so a trustee could clean feces that had been smeared on the window of the cell, the walls, and the floor. (Compl. 2–3.) While in the shower, an unnamed corrections officer and Sgt. Grubbs attempted to "bait" plaintiff into an argument. When plaintiff did not respond, Sgt. Allen left and returned 10–15 minutes later, and the officers huddled around as if they were "mafia figures." (*Id.* at 3.) The trustee, at the direction of Lt. Barton, began to throw away several items of legal mail and other documents that belonged to Williams.

When Williams was escorted back to his cell, plaintiff observed that the officers did not use any disinfectant to clean his cell, leaving behind fecal matter residue along with actual feces in the sink, toilet, and floor. Because of this, plaintiff refused to enter the cell. Sgt. Grubbs, Sgt. Allen, Sgt. Mayes, and Officer Rose pushed plaintiff's face to the floor. Allen and Grubbs punched plaintiff in the forehead and left temple 7–8 times, and Allen slammed plaintiff's head against the floor three times, splitting plaintiff's right eye and causing it to bleed. Sgt. Allen then rubbed plaintiff's face in the toilet water containing feces. (*Id.* at 4.)

Then, plaintiff was taken to the C-4 pod sallyport and placed in four-point restraints. Here, he was assessed by Nurse Fletcher, and Williams told her that his right eye needed stitches and that his blood was on the wall of the sallyport. Also, plaintiff's left temple, jaw, and lip was severely swollen, and the other defendants were trying to put a spit mask over his face to conceal his injuries. Fletcher told the officers to take plaintiff to medical. In addition to the swelling,

plaintiff suffered a fractured left eye socket and cheekbone, and his eye required liquid stitches. (*Id.*)

Plaintiff alleges further that Nurse Fletcher attempted to minimize the extent his injuries and did not give him adequate medical treatment. After he was taken to medical, Nurse Fletcher cleaned plaintiff's face with an alcohol pad and gauze, and they both were saturated in blood. (*Id.* at 5.) Fletcher gave plaintiff pain medication and stated she would prescribe an ice pack for the swelling. Plaintiff was "forced to argue" about the state of his right eye and the fact that it was still bleeding. Fletcher then examined plaintiff's right eye and applied a clear substance that smelled like superglue. Plaintiff asked and was told it was a "liquid stitch". (*Id.*) Despite his injuries, including severe swelling in his left temple, forehead, lip, and jaw, and having a fractured left eyes socket and a split, bleeding right eye, Nurse Fletcher did not admit plaintiff to medical for observation, nor did she send plaintiff to an outside physician to receive stitches or to have an x-ray taken of his face. (*Id.* at 5–6.) Plaintiff further complains that he was discharged from medical with a small ice pack and sent back to his cell that had blood, feces, and toilet water on the window and walls, exposing him to infectious diseases.

The next morning, at pill-pass, Nurse Craft denied plaintiff an ice pack. Plaintiff told Craft that the wound along his right eye was still open and bleeding. At the afternoon pill-pass, Craft told plaintiff that "Nurse Fletcher said that I must be picking at the wound, because it was properly treated." (*Id.* at 6.)

Plaintiff alleges that he was unable to acquire a pen to write a grievance until March 6, 2022. (*Id.* at 7.) Plaintiff filed informal complaints on the officers who committed the assault and the defendants for denying him adequate medical care. As a result, plaintiff was seen by a nurse on March 9, 2022. The unnamed nurse examined plaintiff's forehead and temple. The

3

nurse said that there was not any structural damage and did not order an x-ray. (*Id.* at 7–8.) Plaintiff complains that he has permanent injuries due to defendants' negligence. (*Id.* at 8.)

Plaintiff requests a restraining order against the defendants who assaulted him, $15,000 in compensatory damages from each defendant, and $10,000 in punitive damages from each defendant.[1]

## B. Proceedings Against Lt. Barton

The Office of the Attorney General executed waivers of service on behalf of defendants Grubbs, Allen, Mayes, and Rose. (Dkt. No. 11.) The Attorney General declined to accept service for Fletcher, Kraft, Bledsoe, and Barton. (Dkt. No. 12.) Fletcher, Kraft, and Bledsoe were represented by outside counsel, and the claims against those defendants have been dismissed. (Dkt. Nos. 80, 81.) Barton executed a waiver of service and was served with a summons. His answer was due by July 8, 2024. (Dkt. Nos. 37, 38.)

The Clerk entered default against Barton on April 4, 2025. (Dkt. No. 83.) The court also issued an order directing plaintiff to move for default judgment against Barton or otherwise show cause why plaintiff's claims against Barton should not be dismissed for want of prosecution. (Dkt. No. 82.) Williams moved for default judgment on April 28, 2025. (Dkt. No. 86.)

## C. Facts in Support of Defendants' Motion for Summary Judgment

In support of their motion for summary judgment, defendants submitted the affidavit of T. Still, the Institutional Ombudsman at Red Onion. Still is responsible for maintaining grievance files on inmates at ROSP. (Still Aff. ¶ 1, Dkt. No. 66-1.)

Pursuant to Operating Procedure 866.1, Offender Grievance Procedure, grievances are to be submitted within 30 calendar days from the date of the incident. Before filing a regular

---

[1] Plaintiff attached an affidavit to his complaint with substantively identical allegations as his verified complaint. (Dkt. No. 1-1.)

4

grievance, the inmate must demonstrate he made a good faith effort to resolve his complaint. This can be done by submitting a written grievance form to the appropriate department head. Prison staff should respond to a written complaint within 15 calendar days. (Still Aff. ¶ 6.) A response should be given within 15 calendar days to ensure that it is provided prior to the expiration of the 30-day time period. (*Id.*)

All Virginia Department of Corrections inmates are oriented to the Offender Grievance Procedure when they are received into VDOC and when they are transferred to a different facility, including when transferred to Red Onion. Williams has been assigned to Red Onion at least four times since February 22, 2010, including his last assignment from June 23, 2022, through January 10, 2023. Williams accessed the grievance procedure at Red Onion on several occasions. (Still Aff. ¶ 20.)

On March 6, 2022, Williams submitted a Written Complaint (Tracking # ROSP-22-INF-00365) complaining that on February 12, 2022, between 6:15–7:45 p.m., while housed in C-401, his legal mail, trust statements, and return receipts were thrown away, and he was brutally beaten by 5 officers. Lt. Barton provided a response on March 16, 2022. (Still Aff. ¶ 13, Encl. B.) Williams then wrote a regular grievance on March 23, 2022. Institutional Ombudsman C. Meade rejected the grievance during the intake process because the filing period had expired. Williams appealed to the Regional Ombudsman, who upheld the Level I Intake Decision. The regular grievance was returned to Williams. (Still Aff. ¶¶ 14–15, Encl. C.)

Also on March 6, 2022, Williams submitted a Written Complaint (Tracking # ROSP-22-INF-00366) complaining that on February 12, 2022, between 6:00 p.m. and 8:00 p.m., while in C-401, he was assaulted by five officers. Williams also complained that he was denied an x-ray, proper medical treatment, ice pack, and sick call by the nurses. A response was provided on

March 21, 2022.  (Still Aff. ¶ 16, Encl. D.)  Williams wrote a regular grievance on March 23. The Institutional Ombudsman rejected the grievance as a request for services.  Ombudsman Meade also wrote on the grievance form that Williams was "assessed by medical provider on 3/9/22 and treated accordingly."  Williams appealed the Level I Intake Decision to the Regional Ombudsman.  Regional Ombudsman R. Bivens upheld the intake decision and returned the grievance to Williams.  (Still Aff. ¶¶ 17–18, Encl. E.)

## II.  ANALYSIS

### A.  Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In evaluating a summary judgment motion, a court "must consider whether a reasonable jury could find in favor of the non-moving party, taking all inferences to be drawn from the underlying facts in the light most favorable to the non-movant."  *In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999).  The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in the pleadings.  *Id.* at 324.  Rather, the non-moving party must demonstrate the existence of specific, material facts that give rise to a genuine issue.  *Id.*  Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion.  *Id.* at 248.

B. **Exhaustion**

The Prison Litigation Reform Act (PLRA) provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). A defendant has the burden of establishing that a plaintiff failed to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). The PLRA's exhaustion requirement is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 524 (2002). Exhaustion is defined by each prison's grievance procedure, not the PLRA; a prisoner must comply with his prison's grievance procedure to exhaust his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 218 (2007). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

The record in this case shows that Williams initiated two informal complaints that are related to his allegation that he was assaulted at Red Onion on February 12, 2022. One was rejected as untimely and the other was rejected because it was a request for services. The intake decisions for both were upheld on appeal. Because plaintiff did not file a regular grievance that was accepted into the grievance process, he did not exhaust his administrative remedies. (Still Aff. ¶¶ 19, 21.) As the defendants have made a threshold showing of failure to exhaust, the burden of showing that administrative remedies were unavailable falls to the plaintiff. *Draper v. Ohai*, Civil Action No. 7:23-cv-00248, 2025 WL 270051, at *5 (W.D. Va. Jan. 22, 2025) (citing *Graham v. Gentry*, 413 F. App'x 660, 663 (4th Cir. 2011)).

The PLRA contains its own textual exception to the mandatory exhaustion requirement, as the requirement hinges on the "availability" of administrative remedies. An inmate "must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632, 642 (2016). The Supreme Court has identified three scenarios where an administrative process is considered unavailable: (1) the administrative process "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) the administrative process is so opaque that "no ordinary prisoner can discern or navigate" through the process; and (3) the "administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643–44.

In response to the motion for summary judgment, plaintiff argues that administrative remedies were unavailable because he was placed in the "Self Management Housing Unit" from January 25, 2022, through March 8, 2022. During this time, Williams did not have access to personal items such as legal materials. (Dkt. No. 73-1 at 2–3.) Williams has also alleged, in his verified complaint, that he was unable to write a grievance any earlier than he did because he did not have access to a pen. (Compl. at 7.) It is undisputed that Williams filed two informal complaints on March 6, 2022. OP 866.1 provides that a prisoner must pursue informal resolution before filing a regular grievance, and it also provides that a regular grievance must be filed within 30 days of the incident or occurrence being grieved. Notably, responses to both of Williams' informal complaints were made after the 30-day period had expired. In particular, the grievance that was rejected as untimely was based on a complaint that was responded to on March 16, 2022, more than 30 days after the alleged assault occurred on February 12, 2022.

If plaintiff was prevented from filing a complaint until March 6, 2022, due to his housing status, and then was unable to file a timely grievance because he was not left with enough time to pursue informal resolution, then the grievance process could be considered to have been unavailable to Williams. As stated in the Still affidavit, "[p]rison staff should respond to the inmate's written complaint within 15 calendar days *to ensure the inmate response is provided prior to the expiration of the 30-day time period in which an inmate may file his regular grievance.*" (Still Aff. ¶ 6 (emphasis added).) Here, there is an issue of fact as to whether plaintiff was prevented from pursuing informal resolution any earlier than he did, resulting in plaintiff being thwarted from participation in the grievance process because he did not receive a response to his written complaint prior to the expiration of the 30-day time period to file a grievance. *See, e.g.*, *Mann v. Scott*, No. CIV.A. 0:14-3474-RMG, 2015 WL 5165198, at *5 (D.S.C. Sept. 1, 2015) (finding that "the prison's failure to respond to Plaintiff's [Request to Staff Member Form] made an administrative remedy unavailable in this case, excusing his resulting failure to exhaust prior to filing suit").

For these reasons, the court will deny defendants' motion for summary judgment based on the issue of exhaustion. Moreover, an evidentiary hearing is necessary to resolve factual disputes concerning exhaustion of administrative remedies as required under § 1997e(a). *See Drayton v. Newman*, Civil Action No. 7:22-cv-00574, 2024 WL 1184481, at *6 (W.D. Va. Mar. 19, 2024) (referring matter for an evidentiary hearing to make credibility determinations for the limited purpose of determining whether plaintiff exhausted his administrative remedies) (citing *Allen v. Harwood*, 728 F. App'x 222 (4th Cir. 2018)).

9

### C. Default Judgment

A motion for default judgment is governed by Rule 55 of the Federal Rules of Civil Procedure. Rule 55(b) "authorizes the entry of a default judgment when a Defendant fails 'to plead or otherwise defend' in accordance with the Rules." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982). A defaulting party is found to admit the factual allegations of the plaintiff's complaint but is not held to admit conclusions of law or allegations of liability that are not well-pleaded. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). A plaintiff's burden in moving for default judgment is not satisfied by simply pleading facts; the plaintiff's complaint must also state a cognizable claim to which the well-pleaded facts provide support and show an entitlement to relief. *Id.* Plaintiff also bears the burden of proving damages by a preponderance of the evidence. *See Consolidated Masonry & Fireproofing, Inc. v. Wagman Const. Corp.*, 383 F.2d 249, 252 (4th Cir. 1967). Default judgments are generally disfavored in the Fourth Circuit. *See Tazco, Inc. v. Dir., OWCP*, 895 F.2d 949, 950 (4th Cir. 1990).

Williams alleges that he was assaulted and received inadequate medical care in violation of the Eighth Amendment. Williams alleges that Barton was among the group of defendants that removed him from his cell on February 12, 2022. According to the complaint, however, plaintiff was assaulted after returning to his cell, and Williams does not allege that he was assaulted by Barton or that Barton was present during the assault. Williams does not plausibly allege that Barton was personally involved in Williams' assault or the medical treatment that he received after the assault. *See Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (explaining that liability under § 1983 will lie only "where it is affirmatively shown that the official charged acted personally" in the violation of the plaintiff's rights). Williams also does not allege the elements to establish that Barton could be liable as a supervisor. *See Shaw v. Stroud*, 13 F.3d

10

791, 799 (4th Cir. 1994) (listing requirements for supervisory liability under § 1983: actual or constructive knowledge, inadequate response, and affirmative causal link between inaction and injury).

Williams has also alleged that Lt. Barton directed a trustee to throw away to throw away several items of legal mail and other documents that belonged to Williams. That allegation could state a due process claim based on the deprivation of property; however, the claim is not actionable because of the existence of post-deprivation remedies. *See Holloman v. White*, Civil Action No. 7:24cv00188, 2024 WL 1806432, at *2 n.1 (W.D. Va. Apr. 25, 2024) (explaining that it is "well-settled that allegations of prison officials intentionally or negligently depriving an inmate of his property do not state a due process violation if a meaningful post-deprivation remedy for the loss is available" and that a Virginia inmate "has two meaningful post-deprivation remedies available to him: the inmate grievance procedure and the Virginia Tort Claims Act").

For these reasons, the court will deny the motion for default judgment.

### III.  CONCLUSION

The court will issue an order denying defendants' motion for summary judgment, denying plaintiff's motion for default judgment, and referring this matter to a magistrate judge for an evidentiary hearing on the issue of exhaustion.

Entered:  September 2, 2025.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
Chief United States District Judge